ARTHUR P. NORMANDIN *vs.* HENRY TETU.

NOVEMBER 9, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This action of trespass on the case for negligence was tried in the superior court before a judge sitting with a jury and resulted in a verdict for the defendant. Thereafter the trial justice denied plaintiff's motion for a new trial and the case is here on his exceptions to that decision and to the denial of his motion to amend the bill of particulars. All other exceptions are expressly waived.

The evidence establishes that plaintiff was the owner

and operator of a Chevrolet "cab over engine" type of truck and defendant was the owner and operator of a passenger automobile. A collision between these vehicles happened May 1, 1947 at about 11 a.m. near the intersection of Harris avenue and Winter street, two public highways in the city of Woonsocket. Harris avenue, which runs generally north and south, is about 40 feet wide from curb to curb and is heavily traveled. Winter street runs east and west, is about 32 feet wide from curb to curb, and is surfaced with paving blocks or cobblestones. The latter street intersects Harris avenue from the east but does not cross it. As Winter street approaches Harris avenue from the east it has an appreciable downgrade for a distance of about 300 feet.

According to evidence in favor of the plaintiff, at the time of the accident it was misting following a rain and the surface of Winter street was wet and slippery. The plaintiff was driving his truck southerly on Harris avenue and turned to his left to go easterly upgrade on Winter street. He was traveling 10 to 12 miles per hour, and when "about in the center" of the intersection he saw defendant's car at the crest of the grade on Winter street 290 feet away from Harris avenue. The defendant's car was then traveling downgrade toward the plaintiff at 50 to 60 miles per hour. The plaintiff saw this and continued his turn into Winter street where he stopped his truck with its right front wheel against the right or southerly curb. The truck was on an angle, the extreme rear end being in the crosswalk on Winter street near the easterly side of Harris avenue.

According to plaintiff the truck was wholly on his right side of the center line of Winter street and was stopped about 10 to 12 seconds, during which time he continually observed the irregular approach of defendant's car at high speed for about 275 or 280 feet. He testified that he saw the wheels of defendant's car become locked causing it to skid across the center of Winter street and to collide with

the left front fender and door of his cab, which was located over the engine. In other words, plaintiff claims that the collision happened entirely on his right side of Winter street; that defendant's car had been skidding for a long distance; and that it finally crossed the center line to collide with the left front of the stopped truck. He further stated that after the accident defendant talked with him and admitted responsibility for the collision.

On the other hand evidence for the defendant, which included that of two witnesses who were riding with him as guests, tended to show that his car was being operated westerly on Winter street at about 25 miles per hour when it reached the crest of the grade some 300 feet easterly from the intersection at Harris avenue; that defendant applied the brakes gradually until his car slowed to about 15 to 18 miles per hour as he was approaching Harris avenue; that when he was about 40 feet away from the intersection defendant first saw plaintiff suddenly making a sharp left turn from Harris avenue, crossing into Winter street about 7 or 8 feet from the northeasterly curb of the intersection and blocking defendant's side of Winter street; and that defendant immediately exerted more pressure on his footbrake and his car skidded from 6 to 12 feet into the left front or side of plaintiff's truck, which then was located on defendant's right-hand side of the center of Winter street.

Evidence for the defendant further showed that as his car came downgrade it was about 3 feet from his right-hand side of Winter street; that it was under control; and that the short skid brought it out about 9 or 10 feet from his right-hand curb but did not cause it to cross the center line of that street. The truck was estimated to be about 27 feet long, but no evidence showed precisely how far from the intersection its right-hand front wheels were in Winter street. There was testimony also to the effect that all of the truck excepting the engine was on defendant's side of Winter street, and that both vehicles were moving

at the time of the collision. The defendant admitted the pavement of Winter street was slippery and that he was familiar with Harris avenue traffic and intended to turn left on that street; but he denied responsibility for the accident and also denied making any admissions of responsibility as plaintiff had testified.

In his decision denying plaintiff's motion for a new trial the trial justice discussed certain parts of the conflicting evidence and approved the jury's verdict. He also passed favorably upon the credibility of the defendant's witnesses and clearly indicated his own unfavorable reaction to the plaintiff's explanation of the accident and his credibility generally. In this connection he expressly referred to plaintiff's rebuttal testimony in which the latter attributed to the defendant a certain admission after the accident, which was so improbable and contradictory of his previous testimony as to defendant's alleged admissions that he characterized it as a belated attempt by plaintiff "to cinch his case by an added remark."

Under plaintiff's exception to the denial of his motion for a new trial it is contended that the trial justice misconceived the testimony especially in regard to the alleged admissions; that such misconception was material to his independent consideration of the evidence and to the decision; and that therefore the decision is deprived of the weight ordinarily given by this court to a trial justice's appraisal of the evidence and of the witnesses when he is properly passing on a motion for a new trial. The plaintiff's counsel admits that if the statement of the two admissions were made in the circumstances as the trial justice understood them, the testimony with other evidence might well be so inconsistent or improbable as to greatly affect the plaintiff's credibility. But he points out that both statements were not attributed to the defendant as the trial justice understood and asserted. On the contrary he shows that plaintiff attributed one of these admissions to the defendant and the other to one

of his guests and that they were made at slightly different periods after the accident.

We have examined the transcript and we agree with plaintiff in this contention. Obviously the trial justice misconceived this portion of the evidence, since the plaintiff did not attribute both admissions to the defendant as the trial justice understood them. Indeed defendant concedes that there was such a mistake on the part of the trial justice in this respect but he seeks to avoid the effect thereof by certain arguments which are not convincing. In our judgment the trial justice's conclusion as to the plaintiff's credibility generally was based upon, or at least influenced materially by, a view of the testimony which resulted from a misconception thereof.

Since the evidence was otherwise highly conflicting, the issue of the credibility of the parties and their witnesses became a controlling element in deciding the motion for a new trial. Consequently a misconception of material evidence, if used as the principal basis for appraising plaintiff's credibility, would deprive the decision on such a motion of the value ordinarily to be given thereto where it has been made in accordance with the evidence and the law. In the circumstances, therefore, it becomes necessary for us to examine the transcript independently and without the aid of the trial justice's decision in order to determine whether the verdict is against the great preponderance of the evidence. In other words, in such a contingency we apply the rule of a court of last resort, which requires that the verdict should not be set aside unless in our judgment the evidence strongly preponderates against it. *Bradley* v. *Brayton,* 61 R. I. 44, 47, and cases cited. See also *Audette* v. *New England Transportation Co.,* 71 R. I. 420, 428.

From such an examination we find that the evidence is confusing and conflicting upon certain material elements related to the issues of negligence, contributory negligence, and proximate cause. The accident appears to have happened, not within the intersection proper but actually near

by on Winter street. There appears to be testimony, if believed, that would support a conclusion that both parties were to some extent guilty of negligence. Whether such negligence of one or the other was the proximate cause of the collision is the subject of considerable conflict and doubt upon the record before us.

The plaintiff had the burden of proving all material issues, including his own freedom from contributory negligence, and we cannot say from our examination of the transcript that the verdict of the jury is against the great preponderance of the evidence. Unless we can reach that conclusion we should not set aside the verdict under the rule applicable to our present consideration of the issue. *Bradley* v. *Brayton, supra,* and cases cited. Accordingly plaintiff's exception to the denial of his motion for a new trial is overruled. In view of this conclusion it becomes unnecessary to consider the further exception to the denial of his motion to amend the bill of particulars.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Ambrose W. Carroll,* for plaintiff.

*Boss & Conlan, John T. Keenan,* for defendant.